WELSH administrator of EDWARDS *against* DUSAR.

*Philadelphia,
Saturday,
January 5.*

THIS was an action of *assumpsit*, in which the declaration contained three counts: 1. *Indebitatus assumpsit* for work, labour and services. 2. *Quantum meruit* for the same.

*A went as supercargo from Philadelphia to Batavia, under an agreement*

between the shippers, which so far as respected his compensation was thus: "The com*mission, which is to be four per cent. on the investment, is also to be paid in *Batavia,* "and invested on account of *A.*" *A* died in thirty-six hours after his arrival in *Batavia,* without having made any investment of the cargo. *Held,* that he was intitled to a proportionate compensation, deducting from the whole commission of four per cent. what it would cost the shippers to complete the investment at *Batavia.*

The agreement between shippers, owners and supercargo, after stating the proportions of the shippers, and the object of the shipment, proceeded thus: "The freight which is to "be twenty-five per cent. on the sum shipped, is to be paid in *Batavia,* and invested in the "said ship, on account of *D*" the owner; "the commission which is to be four per cent. on the "investment is also to be paid in *Batavia,* and invested on account of *A*" the supercargo; "*but after the property of the shippers is all on board.*" *Held,* that neither *A* nor *D* was intitled to a preference in the loading of their goods on board the ship, and the ship being nearly full with the goods of the shippers, they must load in proportion to their interests.

The construction of written instruments is the province of the court; and it is of the utmost importance that this province should not be invaded by the jury.

Upon granting a new trial, the court, if they think it expedient, will lay the party who applies for it under a condition to try the merits without regard to the form of the declaration.

3. *Indebitatus assumpsit* for money had and received. Plea, the general issue.

The cause was tried at *Nisi Prius* before the Chief Justice in *October* last; and now upon a motion for a new trial, the case reported was as follows:

The action was brought to recover the amount of the profit which was lost by *Edwards*, in consequence of not having certain commissions, claimed by him, invested at *Batavia*, and returned in the defendant's ship *Martha* to *Philadelphia*, agreeably to contract.

On the 22d of *August* 1803, in some measure by the exertions of *Edwards*, shippers were procured, who agreed to send 54,000 dollars in the defendant's ship to *Batavia*, under the following contract. " We whose names are hereunto sub-" scribed, promise and bind ourselves to put on board the " ship *Calliope* or *Martha*, *William Henderson* master, *Richard* " *Edwards* supercargo, the respective sums annexed to our " names, on or before the first of *September;* which money is " for the purpose of purchasing a cargo at *Batavia*, agreeable " to the instructions to *R. Edwards*. The freight, which is to " be 25 per cent. on the sum shipped, is to be paid in *Bata-* " *via*, and invested in the said ship *Calliope* or *Martha*, on " account of *F. Dusar;* the *commission* which is to be 4 per " cent. on the investment, is also to be paid in *Batavia*, and " invested on account of *Richard Edwards, but after the pro-* " *perty of the shippers is all on board."* On the 7th of *September* the defendant wrote a letter of instructions to *Edwards*, which was also subscribed by the shippers, telling him to invest the 54,000 dollars in coffee, if the *Dutch* government would permit, if not, to obey the orders of government. The sum which remained after deducting freight and commissions, 38,942 dollars, was the sum to be invested on account of the shippers; 12,981 dollars on the defendant's account as owner; and 2077 dollars as the commissions of *Edwards*. " The only equitable mode," proceeded the letter, " to ship such a cargo, is to make out a " separate invoice for each shipper, properly numbered and " marked with their different marks; then *my freight as* " *owner, your commissions, and the officers' privileges, may* " *be invested and stowed in bulk to the best advantage, amongst*

" *the cargo*. Captain *Henderson* is directed to follow your " instructions as to loading." There was another agreement, and a letter of instructions to the captain, differing in some particulars from these, but without the privity of *Edwards*.

*Edwards* attended to the packing of the dollars, and getting them from the bank, on board the *Martha*, in which he sailed, and arrived at *Batavia* in *February* 1804. He died in thirty-six hours after he landed. Captain *Henderson* then made application to the *Dutch* government for permission to load, which he obtained, and superintended the loading with all the risk incident to such business in *Batavia* at that season; but the ship would not contain the whole investment. 2000 dollars were brought home in specie, on account of the defendant's freight, and 1500 dollars besides. On his return to the *United States*, captain *Henderson* received the whole commissions from the shippers, and for these the plaintiff agreed to look to him; his claim against the defendant was for the profits which would have been made by the commissions if invested, and which the defendant had received in consequence of having his freight invested to the exclusion of the commissions. Evidence was given to the jury to enable them to calculate these profits; and it was proved that it was usual at. *Batavia* to allow from two to two and an half per cent. to persons employed by the government, for investing and loading a cargo, where captain and supercargo both died.

The counsel for the plaintiff contended, 1. That *Edwards* was intitled to full commissions, or 2. To a proportion, which by the evidence was at least a moiety. 3. That by the agreement the commissions were to be shipped in preference to the freight, or 4. At the same time and in the same proportion with the freight.

The defendant's counsel asserted the negative of all these propositions, and at the same time insisted that the form of action was wrong, which was reserved for consideration in bank.

The Chief Justice charged the jury in substance as follows:

The principal questions between the parties are in the first place, which of them was to have a preference in the lading of their goods on board the *Martha;* and in the next place,

1811.

WELSH
*v.*
DUSAR.

whether *Edwards* was intitled to *any* commission at all, and if to any, then to how much, since he died in thirty-six hours after the ship arrived at *Batavia*, and before any part of the specie was invested.

The last question demands our consideration in the first instance, because it is the foundation of the plaintiff's claim. The defendant contends that the performance of *all* the services expected from a supercargo, is a condition precedent to his right to receive *any* compensation; that in a contract of this kind, there can be no apportionment; the supercargo must perform *all* the services, and be intitled to *all* the commission, or to no part of it. In support of this principle a case was cited, *Cutter* v. *Powell*, 6 *D.* & *E.* 320., which I think is not applicable. It was the case of a second mate shipped in the *West Indies* on a voyage to *England*. The contract was in writing, and so expressed, that the owner was bound to pay the mate very extraordinary wages, in case he rendered his services during the whole voyage. He died on the passage; and it was decided that nothing was due. But it is evident that the court gave this opinion with reluctance, and founded it on the words of the contract, which were too special and too strong to be got over. It is a hard doctrine; and unless the parties clearly meant that *nothing* should be paid unless the *whole* services were performed, justice requires that in the case of part performance there should be a proportionate compensation. In the common case of servants who hire for a year, it was formerly held, that a servant dying in the year was intitled to nothing. The law is however now held differently, because it is supposed, that unless the contrary is expressed, the understanding of the parties is, that the servant shall be paid in proportion to his services. In the present case the agreement is very loose. It is not even said what services are to be performed. But we are not tied down by the words of the contract; nor is there any evidence of the understanding of merchants, by any custom on this subject. I am therefore inclined to construe the agreement in the most equitable manner; which is, that the supercargo shall be paid in proportion to his services. To say that he should have the *whole* would be extravagant; for in truth he performed but little. The jury must fix the proportion. In doing this they will naturally consider what

it would cost the owner to complete the business; this should be deducted, otherwise the shippers will be made to pay more than they agreed for. From the evidence in the case, I should not suppose that the unfinished business could be done for less than two per cent. at least. If so, one half should be deducted from the commissions. Of this however the jury are the judges.

Let us now consider the other point. The plaintiff says that the goods of *Edwards* should have been put in, in preference to the defendant's; he therefore claims from the defendant the profits which *Edwards* would have made, in case his money had been invested and put on board the *Martha.* He does not claim the commission, but only the profit on it. As to the commission itself, he looks to captain *Henderson,* who stepped into the place of *Edwards,* and received it. To decide this point, we must look to the written contract. It is drawn in that loose manner which merchants are apt to use, trusting too much to good faith. It is not signed by either *Edwards* or the defendant; but that is immaterial, since they have done enough to shew that they adopted it. By this writing the shippers have a clear preference. But as to the owner and supercargo, I do not think that either has a preference, because the words " after the property of the " shippers &c." apply equally to both of them.

The Chief Justice then mentioned another writing by which *Edwards* was clearly postponed to *Dusar;* but he expressed a strong doubt whether *Edwards* was privy to it, and left that fact to the jury. If they thought it was well proved, he instructed them to find for the defendant; if not, they were next to consider what damages the plaintiff was intitled to, which would depend upon the amount of commissions they should think due to *Edwards.* But as neither *Edwards* nor the defendant was intitled to a preference, the jury would have to consider the amount of the defendant's freight, the amount of *Edwards's* commission, and ascertain the proportion that each was intitled to put in, taking into consideration at the same time the amount brought home in specie for the defendant. The profit on this proportion was the sum for which the verdict ought to be given, with such interest as the jury might think proper to allow.

The jury found for the plaintiff 3261 dollars and 45 cents damages, upon the ground that *Edwards* was intitled to the whole commission.

*J. R. Ingersoll* for the defendant. The verdict is clearly against law and the charge of the court; not upon the ground that *Edwards* was not intitled to any commissions; for the Chief Justice having ruled that point in the plaintiff's favour on the trial, the defendant acquiesces; but upon the ground that he was not intitled to full commissions, and to a preference in their investment. The jury could not have found such a verdict, without erring in both respects; and in both the charge was most explicit in our favour. In point of law it is conceived that the plaintiff ought not to have recovered any thing, because *Dusar* was intitled to a preference. The order in which the respective interests were to be invested, is clearly pointed out in the agreement of the 22d *August* 1803. It is the order in which they are mentioned in that agreement. It is clear at all events that *Edwards* had no preference, because upon the most liberal construction for him, the words " after the property of the " shippers is all on board," refer to both freight and commissions.

As to the reserved point, it is perfectly reasonable that the proof should tally with at least one of the counts in the declaration; but here it agrees with neither. The counts for work and labour will not answer, because the demand was for profits not commissions; and the count for money had and received is bad, because there was no evidence that the defendant had ever received a cent of the money of *Edwards*. The foundation of the demand was that his money was not invested in goods and shipped, but that the defendant's goods unjustly occupied its place. It should have been a special action on the case. The plaintiff ought not to disguise such a demand under a general count. We should have had notice by the *narr. Longchamps* v. *Kenny* (a), *Weston* v. *Downes* (b), *Bull. N. P.* 129., *Weaver* v. *Boroughs* (c).

(a) *Doug.* 133.       (b) *Doug.* 23.       (c) *Stra.* 648.

*Ross* and *M. Levy* contrà. The right to full commissions wanted but little of being complete when *Edwards* died. He had promoted the adventure in a very great degree, superintended the shipment, and accompanied it to *Batavia.* The labour there was the smallest part, and the jury have allowed for it accordingly under the charge of the Chief Justice, who left the proportion to them. As to preference, it was a fact which the jury have decided in our favour, and their verdict should not be disturbed. It is the true construction and meaning of the agreement of the 22d of *August.* The goods of *Edwards* were not to be put in, until the goods of the shippers were on board; but the implication is necessary that they were to go in then, that is before any other goods.

The plaintiff could not bring a special action on the agreement, because *Edwards* was not named in it. *Green* v. *Horne.* (*a*) Neither had he performed the entire duty of a supercargo; therefore if the special agreement had been set forth, he must have been nonsuited, because he could not have proved the agreement *in toto.* His only remedy was an equitable one, through the medium of the general counts. In equity the defendant had received his money, because he had received the profits which should have come to *Edwards.* There are many instances of equitable remedies, where there are none at law. 1 *Fonbl.* 144., *Abbot on Ship.* 199. 206., *Edwin* v. *East India Company.* (*b*) New trials are in the discretion of the court. If justice is done, they will not regard form. If they grant a new trial they will lay the party under terms, so that he shall not take advantage of form.

*Ingersoll,* who was about to reply, was stopped by the court.

TILGHMAN C. J. This is a motion for a new trial. The cause was tried before me at *Nisi Prius,* when the dispute was principally on two points. 1st, Whether *Richard Edwards* was intitled to any and what commissions. 2d, Whether in shipping the goods in which his commissions were

1811.

WELSH
*v.*
DUSAR:

(*a*) 1 *Salk.* 197.　　(*b*) 2 *Vern.* 210.

to be invested in *Batavia*, he was intitled to a preference to the defendant, the owner of the ship. With regard to the first point, the defendant contended, that *Edwards* was intitled to no commissions at all, because he died before the completion of the voyage. My opinion was, that he was intitled to a compensation in proportion to the service performed; and as that opinion has not been objected to, it is unnecessary to say any thing more on the point.

On the second point, the opinion which I delivered, and which I still retain, was, that *Edwards* was not intitled to a preference, but he and the defendant stood on the same ground. This question depends chiefly on the articles, signed by the shippers, which, although not signed by either *Edwards* or the defendant, were undoubtedly adopted and acted upon by both, so that they are to be considered as parties. In these articles, dated 22d *August* 1803 there is the following clause—" The freight which is to be 25 per cent. " on the sum shipped, is to be paid in *Batavia*, and invested " in the said ship *Calliope* or *Martha*, on account of *Flori-* " *mond Dusar;* the commission which is to be 4 per cent. is " also to be paid in *Batavia*, and invested on account of " *Richard Edwards*,.but after the property of the shippers " is all on board." These last expressions " after the property " of the shippers is all on board," are to be applied to all the preceding parts of the clause, that is to say, both to the investments of freight, and of commission. To restrain them, as contended for by the plaintiff, to the commissions, would leave the shippers unprotected against the shipment of the proceeds of the freight, in case there should not be room enough for both. This would be an unreasonable construction; for it must be supposed, that the shippers who paid 25 per cent. for freight, intended to provide that at all events their own goods should be first put on board. And this supposition is very much strengthened, by the instructions from the defendant to *Edwards*, dated *September* 7th, 1803, and signed both by the defendant and the shippers. In these instructions are the following directions. " The only equita- " ble mode to ship such a cargo, is, to make out a separate " invoice for each shipper, properly numbered and marked " with their different marks. Then my freight as owner,

" your commissions, and the officer's privileges, may be in- " vested and stowed in bulk to the best advantage amongst " the cargo." Here seems to be no idea of any preference to the commissions. Indeed these instructions are not to be reconciled with such a preference. Now the jury have gone directly contrary to the law; for their verdict is founded on the principle of *Edwards's* preference. The construction of written instruments is the province of the court; and it is of the utmost importance, that this province should not be invaded by the jury. The certainty and uniformity of the law very much depend on it. At the same time, I shall be extremely careful not to invade those rights which the law has vested in the jury. This verdict is in another respect contrary to law. *Edwards* was intitled to an apportionment of the commission, but had no pretence to claim the whole. But the verdict cannot be supported unless he was intitled to the whole. I am very clear therefore that there should be a new trial; but there is a condition which I would annex to it: and that is, that the defendant should try the cause on its merits, without objecting to the form of the action, or to the declaration. As the law now stands, under our acts of assembly, the plaintiff would be intitled to an amendment. But it is a case of a very singular nature, and an amendment might involve the plaintiff in difficulties, to which I think under all circumstances he ought not to be exposed.

YEATES J. of the same opinion.

BRACKENRIDGE J. of the same opinion.

New Trial awarded.