Sayres v. The State.

From the Circuit Court of Macon.
Tried before the Hon. E. W. PETTUS.

THE prisoner was indicted for an assault and battery on one William Walker, and was convicted. The charge of the court, which was predicated on the evidence, and which is assigned as error, was, that if the prisoner "drew a pistol on the prosecutor, with the intention of shooting him, and was then within shooting distance, then he is guilty of an assault, although the pistol was not cocked or presented."

WM. P. CHILTON and JAS. E. BELSER, for the prisoner.

M. A. BALDWIN, Attorney-General, and GEO. W. GUNN, contra.

---

# SAYRES vs. THE STATE.

[INDICTMENT FOR LARCENY FROM THE PERSON.]

1. *Opinion of witness inadmissible.*—The prisoner was indicted by the name of *Saeyvs*, and pleaded in abatement that his name was *Sayres;* to which the State replied *idem sonans*, and issue was joined thereon. *Held*, that a wit-

ness, who was acquainted with the handwriting of the pleader by whom the indictment was drawn, could not be allowed to state, "that he was fully of the opinion that the letter *v*, as written in the prisoner's name in the indictment, was intended by the pleader for an *r*, although he generally made the letter *r* as other persons usually make it."

2. *Proof of ownership of stolen property.*—The stolen bank-notes having been found, in a place pointed out by the prisoner, and handed to the person from whom they are alleged to have been stolen, it is not permissible for the prosecution to prove that he "received them as his own"; nor does the death of the alleged owner before the trial render such evidence competent.

3. *Hearsay inadmissible.*—The declarations of the person from whom the bank-notes are alleged to have been stolen, made on the morning after the night of the prisoner's arrest, "to the effect that he and the prisoner were drunk together on that night, that he let the prisoner have said bank-notes for the purpose of investing them in the grocery business, and that they were not stolen," are not competent evidence for the prisoner, although the declarant has since died.

From the Circuit Court of Barbour.

Tried before the Hon. C. W. RAPIER.

THE prisoner was indicted by the name of Major S. *Sacyrs*, *alias*, Major S. *Sawyers*, for the larceny of certain bank-notes from the person of one William Cunningham. He pleaded in abatement that his true name was *Sayres*; to which the State replied *idem sonans*, and issue was joined thereon. On the trial of this issue, as appears from the bill of exceptions, "the State introduced a witness who testified, that he was well acquainted with the handwriting of the attorney-general, by whom the indictment was drawn, and was fully of the opinion, from his knowledge of said handwriting and a view of the writing of the indictment, that the letter *v*, as written in the prisoner's name in the indictment, (which was conceded by the State to be on its face a *v*,) was intended by said attorney-general for an *r*; and that said attorney-general, although he generally made the letter *r* in the way in which it is usually written by others, sometimes made it as it appears written in this name, so as to resemble a *v*. The prisoner objected to all and each portion of this evidence, because it was incompetent; but the court overruled the objection, and allowed the evidence to be given; and the prisoner excepted. It was shown, also, that the letter *r*, occurring in other words in the indictment, was written as it is usu-

ally written by other people, and was only written like a *v* in the prisoner's surname. This was all the proof in relation to said issue, and the court thereupon decided the same against the prisoner; to which he excepted."

In the further progress of the trial, a witness for the State testified, "that the prisoner, on the day after his arrest upon this charge, told him that the bank-notes, alleged to have been stolen from Cunningham, might be found hidden under a plank in a certain warehouse near the prisoner's residence, and that Cunningham had let him have the money to set up a grocery business, in which they were to be jointly interested; that witness looked in the place designated by the prisoner, and found the bank-notes, and gave them up to said Cunningham, who *received them as his own.*" The prisoner objected to the last portion of this evidence, and excepted to the overruling of his objection.

"It being shown that said Cunningham had died before the 'present term of the court, the prisoner offered to prove his declarations, made on the morning after the night of the prisoner's arrest, to the effect that he and the prisoner had been drunk on that night, that he had let the prisoner have the said bank-notes for the purpose of investing them in the grocery business at Eufaula, and that they had not been stolen." The court excluded this evidence, and the prisoner excepted.

These several rulings of the court are now assigned as error.

JAS. L. PUGH and E. C. BULLOCK, for the prisoner.

M. A. BALDWIN, Attorney-General, *contra.*

STONE, J.—The issue in this case was *idem sonans.* Generally, such issue is triable by the court, without evidence, and not by the jury.

We will not say there might not be cases in which it would be permissible to introduce evidence on this issue. A foreign name might be in issue; and, although the orthography of the two supposed names might, according to the *laws of our language*, requires us to affix to each a

different sound, yet in fact the foreign orthography might be then sounded precisely as the letters employed by the American pleader would be here pronounced. Whether, in such case, the proper issue is *idem sonans*, or that the party is as well known by the one name as the other; or, if the former, whether the issue thereby becomes one for the jury, we do not now determine. See Armstrong v. Burrows, 6 Watts, 266; Wushtoff v. Dracourt, 3 Watts, 240; Jennings v. Sherwood, 8 Conn. 127; Sidwell v. Roberts, 1 Penn. Rep. 386; Welsh v. Dusar, 3 Binn. 337; Denison v. Wertz, 7 Serg. & R. 372; Moore v. Miller, 4 Serg. & R. 279; Watson v. Blaine, 12 Serg. & R. 131; Overton v. Tracey, 14 Serg. & R. 311; Etting v. U. S. Bank, 11 Wheat. 59; Goddard v. Pratt, 16 Pick. 412.

There are some authorities which hold, that "where the writing is illegible, or obscure, the question what the letters really are, is a matter of fact to be decided by the jury."—Armstrong v. Burrows, 6 Watts, 206. There are, however, decisions the other way.—Remon v. Hayward, 2 Ad. & El. 666; Jackson, *ex dem.* Swaine v. Ransom, 18 Johns. 107.

However the rule may be, we are satisfied it cannot aid the prosecution in this case. Here the evidence was not called out to prove what was the meaning of an obscure writing. The bill of exceptions informs us, that the letter, over which the controversy arose, was plainly a *v*. The opinion of the witness was, that the pleader intended the letter *r*. On what this opinion was based, we are not informed. He furnishes no fact from which he draws his conclusion; but, on the contrary, states that the writer usually formed the letter *r* as others do. Under these facts, the opinion was a mere conjecture, and not the judgment of an expert. We think the evidence should not have been received.—Flournoy v. Mims, 17 Ala. 36; Barb. Cr. Law, 399.

It is not our purpose, in thus declaring the law, to lay down a rule which will forbid all intendment, where letters are imperfectly formed. We entertain no doubt that it is the duty of all courts, in cases of doubtful orthography, to consult the context, and so decipher the manu-

script as, if possible, to give the writing some meaning, and carry the intention into effect. That rule cannot aid the present case. Whether the letter was *v* or *r*, it fails to make a word with which we are acquainted. The one orthography produces *S-a-e-y-v-s;* the other, *S-a-e-y-r-s.* No reasonable intendment can give these letters, in either form, the *same sound* as the letters *S-a-y-r-e-s.*

We think there was error, also, in allowing the witness to testify that Cunningham "received the money *as his own.*" What *act* or *word*, accompanying the receipt of the money, enabled this witness to say he received it as his own, we are not informed. Neither are we able to comprehend a distinction between receiving the money *as his own* or otherwise, unless its character was defined by what was said at the time the money was received. The receipt of the money was not one of the facts in issue, so as to let in the *res gestæ.* It was, at most, a collateral circumstance, and, whether true or false, could not prove that the money was the property of Cunningham,—the only point on which we suppose it was offered in evidence. The fact that Cunningham had died before the trial, cannot legalize the evidence.

What Cunningham, the deceased witness, said, on the morning after the alleged larceny, was properly excluded from the jury. It was nothing more than hearsay.

The judgment of the circuit court is reversed, and the cause remanded. Let the prisoner remain in custody, until discharged by due course of law.