Decided 3 November, 1902.

**STATE v. DEAL.**

[70 Pac. 584.]

CRIMINAL LAW — CROSS-EXAMINATION OF ACCUSED.

1. On trial for larceny of a horse it was error to ask the accused on cross-examination, for purposes of impeachment, questions as to his testimony at another trial for the larceny of a horse, he not having testified to anything with which the statements sought to be shown would be in any wise inconsistent.

HARMLESS ERROR — ADMISSIONS AGAINST INTEREST.

2. Error in permitting accused to be asked on cross-examination, for purposes of impeachment, as to matters which he had not testified to in chief, was harmless error where the testimony was admissible as declarations against interest, and refuted defendant's plea of former conviction for the same offense.

*43 Or.—2.*

INSTRUCTIONS SHOULD BE BASED ON ALL THE EVIDENCE.

3. A judge may properly refuse to give requested instructions that ignore part of the testimony.

INSTRUCTION ON FORMER ACQUITTAL — IMMATERIAL MISSTATEMENT.

4. An instruction that, if the horse for the larceny of which he was prosecuted was the same animal for the larceny of which he was formerly convicted, the conviction was a bar to the prosecution, and the verdict should be for defendant on the issue of former conviction, but, if the prosecution in this case was for a different horse, then the verdict on such issue should be for the state, is a correct and compact statement of the law ; and the fact that the instruction improperly referred to the horse for the larceny of which the accused was formerly convicted as a brown horse was not reversible error where the color of the horse had no bearing on the question of identity.

EFFECT OF ADMISSIONS OF COMPLAINING WITNESS.

5. On a prosecution for the larceny of a horse, evidence of the admissions of the complaining witness that the horse was the property of defendant, made several days after the time defendant claimed to have obtained the horse from the witness in a trade, is inadmissible, except for impeachment after proper foundation therefor having been laid, for the witness is not in any legal sense a party to the record, so that his admissions are not binding on the state.

From Union :  ROBERT EAKIN, Judge.

Defendant R. W. Deal was tried upon an indictment for the crime of larceny of a gelding, and, being convicted, appeals from the judgment ensuing.  He interposed two pleas, viz., not guilty, and former conviction for the same offense.   The state, in support of the charge, introduced evidence tending to show that in 1901 Charles Rowland was the owner of a certain brown or dark bay gelding, four years old, branded J D on the left shoulder, then being at Evans' livery stable; that he owned it since it was a suckling colt; that in September, 1901, the defendant drove the animal to and corralled it in the old town of La Grande, in Union County, Oregon, a few blocks from where Rowland was living, and on the same day sold it to one McDonald.   Rowland testified that he never sold or traded the animal to Deal or any one else, and was still the owner thereof.   When the state rested, the defendant took the stand in his own behalf, and testified that he saw the horse, for the larceny of which he was then being tried, in Evans' livery stable on the day previous, and that it was the same horse he turned over to McDonald, that the animal was his property, and that he obtained it from

Rowland about the eighteenth or twentieth of March last; that he traded Rowland two horses for four, and this was one of the four; that he found the horse in Campbell's field, and that on the seventh or eighth day of April he had a conversation with Rowland about the horses, relating it. This is, in substance, all the defendant testified to in chief. Having been excused, and again called in his own behalf, the prosecution, by leave of the court, asked him, in effect, if he did not testify at the trial of the case of *State* v. *Deal*, on October 11, 1901, that the horse mentioned in the indictment was one of the J D horses,— the one that had a leader cut on the left knee, which was calloused, the same being the horse brought from Pendleton, and one of the horses that he got in the trade with Rowland.   The question was objected to as incompetent, irrelevant, not cross-examination, and not proper for impeachment; but, being overruled, he answered that he made no such statement. The examination was, over objections, then continued as follows: "Q. Did you state which one of these horses was mentioned in the indictment in the former trial? A. Yes. Q. Which one of these horses did you testify that you was indicted for in the other trial? A. The one that has the cut knee.   Q. And that was the horse that you brought — that you took — to Pendleton, and that Charles Rowland brought back from Pendleton; was the horse described in the indictment in the former trial, is what you understood it?   A. The horse with the cut leader is the horse that I understood was in the former case.   That is the way I understood it.   That was what they called the Masterson horse.   Q. Just answer the question yes or no, will you please?   A. Yes, that is the horse.   That is the horse I understood was in the other trial."   In rebuttal, and for the purpose of contradicting Deal, the state was permitted, also over objection, to show by the court reporter that he had testified at the trial of October 11th in substance as

indicated by the question first propounded by the state.

In this connection it should be further stated that the defendant, in support of his plea of former conviction, introduced in evidence the judgment roll in the case tried October 11, 1901, showing his conviction of the crime of larceny of a gelding, the property of Charles Rowland, and, to show that the animal therein involved was the same as he is here charged with stealing, introduced in evidence a portion of the testimony of Charles Rowland, in substance that he (Rowland) learned that the horse was in Campbell's pasture, and went over to get it; then heard it was in Pendleton; that he could not tell who had it in Campbell's pasture, and could not say exactly how old it was; that he obtained it from Masterson's boy when it was a yearling, and had it about four years; and that he did not get two horses from Masterson. Also a portion of his own, showing that the animal he obtained at Campbell's was the dark bay horse that Rowland had purchased from Masterson, and that was four years old the preceding spring. The state caused to be read other testimony, showing that Rowland stated at the former trial that the Masterson horse, for the larceny of which defendant was then on trial, was branded J D on the left shoulder, had one white foot, and a blemish on one knee, caused by a wire cut, and that this was the horse that defendant had in the Campbell pasture in the spring of 1901.

Affirmed.

For appellant there was a brief over the names of *Thos. H. Crawford* and *Ivanhoe & Cherry*, with an oral argument by *Mr. Crawford.*

For the state there was a brief over the name of *D. R. N. Blackburn*, Attorney General, with an oral argument by *Mr. Blackburn* and *Mr. Samuel White*, District Attorney.

MR. JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

1. The first question presented for our consideration is whether the trial court was in error in permitting the state to cross-examine the defendant, while a witness in his own behalf, touching what he may have testified to in his examination in a case wherein he was tried for larceny of a gelding at the preceding October term of the court, and, if so, whether the error was injurious or harmless in view of the whole record. The form of the question propounded by the prosecution would seem to indicate that it was for the purpose of impeaching the defendant as a witness in his own behalf, and thereby discrediting his testimony. At that stage of the proceeding the defendant had offered no proof in support of his plea of *autrefois convict*, although the record does show that the state had called several witnesses to prove that the horse Deal was then being tried for stealing was not the one involved in his trial at the preceding October term; so that it was in anticipation of the proof which it was supposed the defendant would make under his plea that the state sought to draw from him what he had testified to at the former trial in the particulars alluded to, and was irregular in any event. If impeachment was intended, the method invoked could only be permitted when it was sought to show that he had at other times made statements inconsistent with his present testimony: Hill's Ann. Laws, § 841. He had then testified to nothing with which the statement sought to be shown would in any wise he inconsistent. It related to an entirely different subject from any that he had spoken of while being examined in chief; so that it was not proper matter for his impeachment at that, or, as the record shows, at any other, stage in the trial. This is suggestive of a more substantial reason why the defendant, as a witness in his own behalf, should not have been required to

answer. The question propounded was not cross-examination upon any fact to which he had testified in chief: *State* v. *Saunders*, 14 Or. 300 (12 Pac. 441).

2. But, notwithstanding there was undoubted error in the admission of the testimony as offered, counsel for the state insist that it was legitimately admissible, because consisting of admissions and declarations against the interest of the defendant and in derogation of his plea of former conviction, and that, therefore, it was harmless. It was concededly admissible for this purpose. The method pursued was practically fruitless as a means of impeaching the defendant's credibility, as his further examination by the state's attorney, although improper, shows. Notwithstanding the defendant answered in a general way that he did not make the statements imputed to him, yet, when his attention was attracted to the details, he frankly conceded them in almost if not in every particular. To specify : He testified on further examination that he stated at the former trial that the horse with the cut knee was the one then mentioned in the indictment ; that it was the horse that defendant took to Pendleton and Charles Rowland brought back from there, and, in further designation, was what was called the Masterson horse. So that the feature of any particular discredit of defendant's testimony by the method of examination pursued is eliminated. This being so, and the testimony being admissible as declarations against his interest, and constituting substantive proof to refute defendant's plea of former conviction for the same offense, we are induced to believe that allowing the testimony to go to the jury, even if for the purpose of impeachment, was harmless error and not sufficient cause for awarding a new trial.

3. Another error of the trial court is predicated upon the refusal to give the instructions submitted by counsel for defense relative to the plea of former conviction, num-

bered 2 and 4 in the record, and upon the giving of instruction numbered 5.   By No. 2 it was sought to have the court tell the jury that the record and evidence in the former case shows that the gelding for the larceny of which he was then convicted was a gelding which Charles Rowland obtained from Eddie Masterson, and known and described in the testimony of the witnesses therein for the state as the Masterson horse, and that, if they found from the evidence in the present case that the gelding for the larceny of which defendant was being tried is the one that Rowland obtained from Eddie Masterson when it was a yearling, and is what is known as the Masterson horse, the defendant should be acquitted.   By No. 4 it was sought to have the court further tell the jury that the fact as to whether or not the gelding in question had a blemished knee or one white foot, or was taken by defendant to Pendleton, is wholly immaterial in determining whether or not the horse is the Masterson horse, for the larceny of which the defendant had been convicted, and that the material question in the case was whether this gelding is the same animal that witnesses in the former trial testified was taken by Deal from the Campbell place last spring, and the same that Rowland obtained when a yearling from Eddie Masterson.   Instruction No. 5, as given, is as follows :

"Defendant has not only entered a plea of not guilty, but has also entered in this case a plea of former conviction, viz., the conviction at the former October term of this court, 1901, for the larceny of a brown gelding, the property of this prosecuting witness, Charles Rowland. If the gelding for the larceny of which he is prosecuted in this case is the same animal for the larceny of which he was prosecuted in the former case, then the conviction in this former case is a bar to a prosecution in this case, and if you so find, then your verdict should be for the defendant upon this issue.   But if you find that the prosecu-

tion in this case is for the larceny of a different gelding than the one for the larceny of which he was convicted in the former case, then your verdict on the issue of former conviction should be for the state on that issue."

For the purpose of perspicuity, we make further reference to the testimony. Eddie Masterson testified for the defense that he traded Rowland the horse colt, a dark bay, when it was a yearling; that the animal was four years old past; that he had examined the horse in Evans' livery stable, referred to in the prosecution in this case, and that it was the same horse he traded Rowland when a colt. Masterson further gave testimony to the same effect, and Campbell testified that he had seen the horse in Evans' livery stable, and that it was the same animal defendant had taken from his pasture in 1901; and this was somewhat corroborated by witness Crawford. In rebuttal the state offered evidence tending to show that the horse for which defendant had been convicted of stealing was the one Rowland obtained from Eddie Masterson when it was a yearling; that it had a white hind foot and a blemished knee; that the horse in Evans' livery stable was not the horse that Rowland obtained from Masterson, and that Rowland had raised the one in question from a suckling colt. From this testimony, and that which was adduced by the state in support of the prosecution, it is readily discerned that the instructions asked for are attended with an inherent vice. It consists of predicating the identity of the subject of larceny at the first trial with that of the latter upon one or two circumstances disclosed by evidence, and ignoring others that shed some bearing upon the question. The state was entitled to have the matter determined upon all the testimony, and the instructions would have been effective to withdraw at least a portion that had a pertinent bearing in the premises. They are argumentative and are specious for the use of the advocate

for the defense to show that as a matter of fact the defendant was being tried a second time for the same offense, but do not lay down sound rules of law for the government of the jury in determining their verdict.

4. Instruction No. 5 covered the question involved clearly and comprehensively, and was appropriately given. That the instruction described the subject of the larceny at the first trial as a brown gelding does not vitiate it. The color of the animal seems to have had no bearing upon the question of identity, as the horse in either case seems to have been described indiscriminately as a brown or dark bay, and the color was not relied upon as a distinctive feature.    Identity was a question that was sought to be proved or refuted by other circumstances and conditions entirely.

5. The only other error assigned relates to the refusal of the court to admit the testimony of two witnesses — Hopper and Hammock — who were called by the defendant to prove that Rowland some time in the fore part of April, 1901, made the following statement to the defendant, namely, "The horse I traded you is at W. B. Campbell's place."    The purpose of the testimony was to show substantively that defendant was the owner of the animal by the admission of the prosecuting witness.    The answer of the state is that such a witness, although he be the owner of the property against which the offense was committed, is not in any legal sense a party to the record, whose admissions or declarations are binding upon the state, and they were not, therefore, competent evidence against the prosecution as having a tendency to defeat the action.    This we deem to be a sound exposition of the law.    The prosecution is beyond the control or limitation of the prosecuting witness, and whatever facts may be necessary to establish the defense must be shown otherwise than by his admissions or declarations.    These are

admissible, as we have held in *State* v. *Deal*, 41 Or. 437 (70 Pac. 532), to affect his credibility. A proper foundation had there been laid for impeachment, such as would have been laid if any other witness had been under examination. Beyond this, it may be said they are inadmissible, except as a part of the *res gestæ:* Roscoe, Cr. Ev. (8 ed.) p. *52; *Williams* v. *State*, 52 Ala. 411; *Sayres* v. *State*, 30 Ala. 15; *Belt* v. *State*, 103 Ga. 12 (29 S. E. 451). In view of these authorities, which announce the better rule, there was no error in rejecting the proffered testimony of these witnesses.        AFFIRMED.

Decided 25 May, rehearing denied 3 August, 1903.