## Armstrong *against* Burrows.

A deposition is not admissible in evidence, if it be made to appear that the witness was not sworn until after his testimony was reduced to writing. But if the party do not make the objection before the justice, it will be considered as waived.

Upon the trial of a cause, in which the date of a receipt is the material matter in issue, evidence of the receipt of money by the party, at the time when he alleges the receipt to be dated, is not irrelevant.

To decipher illegible letters or figures in a paper material to the issue, belongs to the jury, not to the court.

ERROR to the common pleas of *Lycoming* county.

This was an action of debt upon a note, dated the 24th of May 1832, for the payment of 833 dollars 44 cents, one year after date, by Burrows and Bryson & Co., against George S. Armstrong and John Rankin.

During the progress of the trial, the plaintiffs offered in evidence, the deposition of Tunison Coryell. The defendants objected to it, on the ground, among others, that the witness had not been sworn by the justice until after the deposition had been reduced to writing. It appeared the parties were present before the justice, and cross-examined the witness. The court overruled the objection, and sealed a bill of exceptions.

The only matter in dispute on the trial, was as to the date of a receipt of the plaintiff. The defendants gave the receipt in evidence, which they contended, was dated the 24th of June 1834. The plaintiff contended the date was the 24th of January 1834, and the money was paid on another, and different note. The difficulty of determining the date, was occasioned by the fact of its being illegible.

In order to show that the defendant was in funds, on the 24th of January 1833, when the plaintiff alleges the receipt is dated, they offered a receipt of the defendant's of that date, to the superintendant of the canal, for the sum of 515 dollars.

The defendants objected to the evidence, but the court overruled the objection, and sealed a bill of exceptions.

The defendants offered in evidence, their books, kept in the hand-writing of Armstrong, who wrote the receipt, for the purpose of showing the general character of the hand-writing, particularly having reference to the words, January and June.

The plaintiff objected to the evidence, and the court rejected it, and sealed a bill of exceptions.

The court charged the jury, that it was the province of the court to construe writings given in evidence, and that it was their opinion that the receipt was dated the 24th of January 1833. But

[Armstrong v. Burrows.]

if the jury believed that it was so dated by mistake or otherwise, and that the money was, in fact, paid in June 1833, they should find their verdict accordingly.　Verdict for plaintiff.

The errors assigned, were to the opinion of the court, in the several bills of exception and their charge to the jury.

*Parsons* and *Ellis,* upon the bills of exceptions to evidence, cited 16 *Serg. & Rawle* 214; 12 *Serg. & Rawle* 10; 3 *Penns. Rep.* 41; 4 *Serg. & Rawle* 500; 1 *Penns. Rep.* 179; 5 *Binn.* 349; 10 *Serg. & Rawle* 110.　As to the charge of the court, they contended that to decipher the date of the receipt was for the jury, and not for the court.　6 *Con. Eng. Ch. Rep.* 216; 11 *Wheat.* 59.

*Armstrong* and *Bancroft,* for defendants in error.

The opinion of the Court was delivered by

Gibson, C. J.—Testimony by deposition is a substitute for testimony by oral examination; and there can be no pretence why it should not be given at an examination pursuant to a rule, as it would be given at the trial.　To let an unsworn witness tell his story to the jury first, and swear him to the truth of it afterwards, would be undoubted error; and why would it not be so to pursue the same course before an examiner?　In every indictment of perjury, there is an averment that the defendant was first sworn; and on every commission or letter of instructions accompanying it, there is a direction to let the oath precede the examination.　The common rule is the authority of the magistrate, and it differs less from a commission in substance than in form.　This is not an unimportant matter in practice.　The obligation of an oath is more vividly present with the conscience when its sanction has already been appealed to, than when it is barely in contemplation.　To a conscientious man the difference would indeed be unproductive of consequences; but a conscientious man would be a safe witness without any other obligation than innate love of truth.　Oaths are not for the just, the object of appealing to the conscience at all, being to make fear tributary to justice.　Again, a witness must not offer his testimony all at once, (as he necessarily would, were it reduced to writing beforehand,) if for no other reason, because the examination, if such it might be called, would proceed too fast for deliberation by those who are to consider of the course of examination on the other side.　Besides, it might be unsafe to give a disingenuous witness time to weave an artful story and prepare a colouring for it, that would deceive without exposing him to detection or the risk of temporal censure.　If there is a chance of truth from such a man, it is in having his story in off-hand terms, and without adaptation to anticipated points of cross-examination.　Depositions in the hand-writing of counsel, have been held incompetent; but it would be impossible to say what influences might

[Armstrong v. Burrows.]

have been felt in the concoction of testimony reduced to writing by the witness, or how far the preceding rule might have been intentionally eluded. Depositions are conceded to be more open to abuse than oral testimony; and it is for this reason that they were introduced into courts of common law avowedly as secondary and only in cases of extreme necessity, though their great convenience has brought them into general use. " For a rogue," it is said in *Madd. Ch:* 330, " a *viva voce* examination is the best; but for an honest man, depositions coolly and deliberately made, seem preferable." It is for the rogue, however, that the preventive apparatus of the law is intended. But we may have all the convenience of which the practice is susceptible, without relaxing those forms of procedure which experience has shown to be the best preservatives of purity; and though I would neither encourage a laxity so dangerous as the practice pursued in this instance, nor exact the strictness observed by an examiner in chancery, it is not too much to require the witness to be sworn in the first place, and his testimony to be taken down, as it falls from him, by the magistrate or an impartial substitute. Had this deposition, therefore, been taken *ex parte,* or had objection to the course pursued been made before the magistrate, it must have prevailed here; but the objection of the counsel in attendance went to another point, and we must consider the present to have been waived.

The receipts of the 24th of January and 17th of June 1833, seem not to have been entirely irrelevant, showing, as they did, that the defendants were in funds at the periods which the plaintiffs insist were those of actual payment. On the other hand, I see no objection, at present, to the two entries in the hand-writing of Armstrong, made in the course of his business, when the present controversy was not foreseen, to show the habitual character of his writing; but the note to Mr Parsons, of the 18th of June 1834, written since the commencement of the suit, was for that reason inadmissible.

The matters objected to in the charge, consist, with one exception, in opinions as to facts, which are not subjects of error, or law so plainly right as to be incontrovertible. But that the court assumed an exclusive right to decipher the contested letters, is both true and fatal. It doubtless belongs to it to interpret the meaning of written words; but this extends not to the letters, for to interpret and to decipher are different things. A writing is read before it is expounded, and the ascertainment of the words is finished before the business of exposition begins. If the reading of a judge were not matter of fact, witnesses would not be heard in contradiction of it; and though he is supposed to have peculiar skill in the meaning and construction of language, neither his business nor learning is supposed to give him a superior knowledge of figures or letters. His right to interpret a paper written in coptic characters, would be the same that it is to interpret an English writing; yet the words

[Armstrong v. Burrows.]

would be approached only through a translation. , The jury were, therefore, not only legally .competent to read the disputed word, but bound to ascertain what it was meant to represent.

Judgment reversed, and a *venire facias de novo* awarded,