## ARTHUR vs. ROBERTS.

In a case where it can be claimed that there is a doubt as to what a word, letter or figure, contained in an instrument, was intended to be, extrinsic evidence is admissible upon the question, and does not infringe upon the general rule that parol evidence is not admissible to change or explain a written instrument; the object of the inquiry being to ascertain what the language of the instrument in fact is, and not to give it a construction.

Although the question whether the dispute is to be determined by the court, or by the jury, does not necessarily arise in an action tried before a referee, performing the office of both court and jury, yet the sensible rule is, that the question is one of fact, for the jury; and such is the weight of authority.

When the question is about a figure, in the year of payment of a promissory note, the testimony of the person who drew the note, as to what the figure was intended to be, and that at the time of the making of the note the figure in question was read to the maker, as a cipher, is admissible.

In such a case, the reading of the note to the maker is part of the *res gestæ*, and proof of it admissible for that reason.

APPEAL, by the defendant, from a judgment entered on the report of a referee.

*Earl & Smith*, for the appellant.

I. The figure in question is plainly and unquestionably a 1. No person reading the note, and hearing no suggestion to raise an inquiry, would think of reading it otherwise. Nor, upon the closest examination of the figure, can it be made to be a cipher. In other words, it needs extrinsic evidence to show that what is an apparent figure

Arthur *v.* Roberts.

one was meant to be a cipher. 1. The apparent character of the figure cannot be thus contradicted. To allow it, would override the rule that the clear, apparent terms of an instrument cannot be contradicted by parol. 2. If in truth the instrument, as it appears in court, does not express the real intention of the parties and the actual agreement, it is a case for the correction of the instrument, and its enforcement as corrected. The plaintiff in this suit cannot enforce a contract not disclosed by the written agreement, by proving that such agreement is incorrect on its face. 3. It is only in cases where the contents of an instrument are unintelligible, from its characters being so written that they cannot be deciphered, that the court hears parol evidence as to their true reading and meaning. But here the character in question is neither illegible, ambiguous, or obscure. Even in such cases the court hears only the testimony of experts. (*Masters* v. *Masters*, 1 *P. Wms.* 425. *Norman* v. *Morrell*, 4 *Vesey*, 769. *Armstrong* v. *Burrows*, 6 *Watts*, 266.) In the case of *Remon* v. *Hayward*, (2 *Adol. & Ellis*, 666.) counsel having suggested that a word in the paper sued on was, "Mrs," not "My," Denman, Ch. J., would not allow the evidence, but gave his own reading, and would not allow it to be put to the jury upon evidence, what the word really was. 4. In any case, if the court were to be controlled by the evidence of witnesses, they should appear to be experts. It would be absurd for the court to have its conscience informed as to the reading of an obscure or illegible document by witnesses not pretending to have any special skill, and still more so, in the case of a document plainly written.

II. The evidence given to show that this character was read to the appellant as a cipher, was clearly incompetent. The effect of actual figures could not be nullified in this way and another effect substituted, without violating the plainest rules of evidence. And yet it is quite probable that the referee was controlled by this kind of evidence.

III. The nonsuit should have been granted. The plaintiff having come into court with this paper, must stand or fall by its actual terms. He could not recover by giving the assertion of a witness, that what was apparently one word or figure was really another and different. He could not recover by proving that the instrument was read to the maker of the note differently from what it appears on the paper on which he sues. Reading the note as it must be read, there was no cause of action until June 1871, long after this action was commenced.

*C. A. Moon*, for the respondent.

I. The evidence of Williams, the writer of the note, in relation to what the disputed character was, was properly admitted. 1. The character was obscure, doubtful, illegible and difficult to be read. "If the handwriting in an instrument is obscure and difficult to be read, the evidence of persons skilled in deciphering writing is admissible to show what the writing is." (2 *Phillips on Evidence, with Cowen & Hill's and Edwards' Notes, p.* 733, *citing Masters* v. *Masters*, 1 *P. Wms.* 425; *Norman* v. *Morrell*, 4 *Vesey*, 769; *Goblet* v. *Beechey*, 3 *Sim.* 24; *Armstrong* v. *Burrows*, 6 *Watts*, 266; *Remon* v. *Hayward*, 2 *Adol. & Ellis*, 666.) "When difficulty arises from the obscurity of the writing itself, e. g., if it be illegible from lapse of time, accident, &c., one skilled in deciphering may be called." (4 *Hill*, 131, *note b. N. Y. Civil & Cr. Justice*, 361.) 2. That the writer of an instrument is *quoad* that instrument, an expert, and one skilled in deciphering writing, is, we think, a self-evident proposition, requiring no authorities to establish or sustain.

II. The motion for a nonsuit, at the close of the plaintiff's testimony, and also at the close of the case, was properly denied. 1. Where the writing is illegible or obscure, the question, what the letters really are, is a matter of fact to be decided by the jury. (2 *Phill. Ev.* 734, *with*

Arthur v. Roberts.

*Cowen & Hill and Edward's Notes, and cases cited. Jackson ex. dem. Swain* v. *Ransom,* 18 *John.* 107. 6 *Watts,* 266. 4 *Hill,* 129.) 2. The question of fact in reference to what the character was, being decided in favor of the plaintiff, there can be no question but that a cause of action was fully established by the proof.

III. This is not a case within the rule prohibiting oral evidence to explain, vary or contradict a written instrument, or to explain a patent ambiguity. 1. The evidence objected to was introduced, not to explain, contradict or vary the instrument, but to show what it was. 2. The authorities in England and America have very much limited, if not overthrown, the rule of Lord Bacon, that a patent ambiguity cannot be explained by extrinsic evidence. Phillips says, "he (Lord Bacon) seems to have believed that no instance of ambiguity, apparent in the instrument, could be holpen by averment, that is, by extrinsic evidence. But this certainly is not law at the present time." (2 *Phill. Ev. and Notes, pp.* 750, 751.) *Cowen & Hill, note* 515, *p.* 747, of the book cited, says: "It will not do to say, therefore, that a patent ambiguity (meaning thereby merely an ambiguity patent, or appearing on the face of the instrument,) cannot be explained by evidence *aliunde,* though such remarks are frequently found in the books." Citing authorities. (*See further authorities in same note, pp.* 747, 748, 749, *also p.* 761 *of the text.*)

IV. Should the court, on examination of the note, agree with me in the opinion that the character in question is a cipher, then a new trial should be denied, even if the court should hold that extrinsic evidence is not admissible to show what the character is, because in such case the evidence could do no possible harm. (*Barton* v. *City of Syracuse,* 37 *Barb.* 292 ; *S. C. aff'd* 36 *N. Y.* 54.)

V. On the contrary, should the court, on an examination of the note, be of the opinion that the character in question is so clearly a "1" that extrinsic evidence is inad-

missible, then we ask that the order granting a new trial direct that the plaintiff be permitted to amend the complaint by alleging that the figure in question was inserted by mistake for a cipher, and in the relief sought, ask that the contract be reformed in that respect, and that he recover judgment for the amount due on the contract so reformed.

*By the Court,* TALCOTT, J.　This action was brought upon a promissory note for $200, dated December 16, 1868, made by the defendant, payable to William W. Williams, or bearer, and transferred to the plaintiff.　The action was commenced in 1870, and the complaint avers the note to have been payable on the first day of June, 1870. When the note was produced on the trial, it appeared that the year of payment was written in figures.　And the case states that upon the production of the note a dispute arose, between the attorneys for the respective parties, as to the last figure of those expressing the year for payment; the defendant's attorney claiming that the figure was 1, thus making the note mature June 1st, 1871, in which case the suit was prematurely commenced; the plaintiff's attorney, on the other hand, claiming that the last of the said figures was a cipher, in which case the note matured June 1st, 1870, and before the commencement of the suit.　The defendant is an illiterate person, and signed the note by his mark.　The note was drawn by Williams, the payee, who, from the appearance of the note, would seem to be a person not much accustomed to writing.　The signature by the defendant's mark was witnessed by the plaintiff.　After the question arose, as to the disputed figure, the plaintiff called as a witness Williams, the writer and payee of the note, and proposed to prove by him what the disputed figure was, and also that at the time of the making of the note the figure in question was read to the defendant as a cipher.　To the ruling of the referee admitting this testi-

Arthur *v.* Roberts.

mony the defendant excepted. The witness testified that the disputed figure was a cipher, and was so read to the defendant when the note was made. The defendant also moved for a nonsuit upon the ground that the suit was brought before the maturity of the note; and the motion being denied, he excepted.

The defendant, being called as a witness in his own behalf, stated that the note was read to him as payable in 1871. The plaintiff gave further evidence, without objection, tending to show that according to the agreement of the parties the credit given by the note was to be about 18 months. The referee reported in favor of the plaintiff, thereby deciding that the note was payable in 1870.

The reading of the note to the defendant was part of the *res gestæ*, and proof of it admissible for that reason.

The counsel for the defendant claims that the figure in question is plainly a figure 1, and not a cipher. A photographic copy of the note is contained in the bill of exceptions. Whether this court can say, from an inspection of the photographic copy, that the question is free from all doubt, will be considered hereafter. Assuming that there is doubt concerning the disputed figure, the question arises, how is that doubt to be solved? The authorities are not entirely harmonious on this subject.

In *Norman* v. *Morrell*, (4 *Vesey*, 769,) the question was as to the amount of a legacy specified in figures, in a will written by the testatrix, namely, whether it was £800, or only £300. Considerable extrinsic evidence had been taken on the subject. An engraver had been examined, and letters written by the testatrix were put in evidence, to show how she made her figures. On the case coming up for hearing, this evidence was not read, but the chancellor directed an issue to be tried at law; which seems to indicate his opinion that it was a question of fact proper to be determined by a jury.

On the other hand, in *Remon* v. *Hayward*, (2 *Adol.* &

*Ell.* 666,) a question arising at *nisi prius*, from the obscurity of the handwriting, as to what the words of an instrument were, the lord chief justice decided it, and refused to have it put to the jury. Whether in this case extrinsic evidence was received or offered, does not appear from the brief note of the case in the American edition of the English Common Law Reports. *Gresley's Evidence in Equity* (§ 280) lays down the rule as follows: "If the *characters* are difficult to be deciphered, or the language, whether local and provincial, or altogether foreign, is not understood by the court, the evidence of persons skilled in deciphering writings, or who understand the language in which the instrument is written, or the technical or local meaning of the terms employed, is admissible to declare *what are the characters*, or to translate the instrument, or to testify to the proper meaning of the particular words;" but in the same section it is added: "If the question arises from the obscurity of the writing, it is determined by the court alone;" citing as authority for this proposition only the case of *Remon* v. *Hayward*, (*supra*.) *Greenleaf*, in his treatise on *Evidence*, (*vol.* 1, § 280,) follows *Gresley*.

In *Armstrong* v. *Burrows*, (6 *Watts*, 266,) the question was as to the date of a receipt—whether June or January. Some extrinsic evidence was given, touching the transactions between the parties, in order to establish the probability that the payment receipted for must have been made at a particular time. The difficulty in the case arose from the obscurity of the writing. The court charged the jury that it was the province of the court to construe writings given in evidence, and it was their opinion that the receipt was dated the 24th of January. For this reason a new trial was ordered; the court in banc holding that though it is the office of the court to interpret writings, the words to be interpreted must be ascertained as a question of fact, and that extrinsic evidence for this purpose may be re-

sorted to, as though the writing were in Coptic characters, and saying " the jury were therefore not only legally competent to read the disputed word, but bound to ascertain what it was meant to represent."

In *Haven* v. *Brown*, (7 *Greenl.* 421,) the writing was obcured and worn. Extrinsic evidence was admitted to show what the words were probably intended to be, and the question left to the jury. Although the cause was disposed of on other grounds in banc, the court expressed approval of the course taken at *nisi prius* in regard to this question; saying, " it is the language itself, and not its construction, which was to be ascertained."

In *Jackson* v. *Ransom*, (18 *John.* 107,) it had, on the trial, been left to the jury to say whether the number of a lot, as specified in a deed, was 84 or 174. The jury found it to be the latter. So far as appears, no very direct extrinsic evidence was given on the subject. When the case came up in banc, the court, without any expression as to whether the question belonged to the court or jury, or whether extrinsic evidence was admissible, examined the whole original deed, and from such examination concurred with the jury. Spencer, Ch. J., delivering the opinion of the court, said : " I agree to the position, that if the writing be so illegible as not to be read, or to leave it in a state of uncertainty what is conveyed, so far the deed will be inoperative. I, however, think this not to be such a deed; and I am satified by an examination of the whole deed, that the figures in question are 174. The figure 8 occurs in other parts of the deed, and it is wholly dissimilar to what is said to be 8, in this number; and I have no doubt the figures are 174."

The learned annotators upon *Phillip's Evidence*, (*vol.* 2, *p.* 733 *and note—Cowen, Hill and Edwards*,) lay down the rule thus : " If the handwriting in an instrument is obscure and difficult to be read, the evidence of persons skilled in deciphering writing is admissible to show what the writ-

ing is." (*See also Mr. Hill's note b. to Sheldon* v. *Benham,* 4 *Hill,* 129.)

On the whole, we think that in a case where it can be claimed that there is a doubt as to what a word, letter or figure, contained in an instrument, was intended to be, extrinsic evidence is admissible upon the question, and does not infringe upon the general rule that parol evidence is not admissible to change or explain a written instrument; the object of the inquiry being to ascertain what the language of the instrument in fact is, and not to give it a construction.

The other question, whether the dispute is to be determined by the court or by the jury, perhaps does not necessarily arise in this case, since this action was tried before a referee, performing the office of both court and jury. Yet we think the sensible rule is, that the question is one of fact for the jury, and such we deem the weight of authority.

The next question is, whether the testimony of the defendant Williams was competent on this subject. It is objected that he was not an expert; but he was not offered as an expert, to express an opinion, but as a witness, who could speak from knowledge. He is the party who made the figure in dispute, and, as a matter of common sense, must be, of all, the best able to say what that figure was intended to be. All that an expert would be able to do would be to express an opinion as to what figure was intended by the writer. It is obvious that the testimony of the writer himself, honestly and intelligently given, must be more satisfactory. To use the illustration applied in *Armstrong* v. *Burrows,* (*supra,*) if it were a question of Coptic characters, it would scarcely be claimed that he who made them was not competent to state what they were intended by him to be. Of course, the honesty, intelligence and memory of the witness are in this, as in all

Arthur *v.* Roberts.

other cases, to be judged by the tribunal which hears the testimony.

There yet remains the question whether this court can say that the disputed figure is so clearly a figure 1, that there can be no doubt about it, and consequently that no extrinsic evidence could be given on the point. The only evidence on the subject before us is what is stated to be a photographic copy of the note, contained in the bill of exceptions. Examining that in the manner in which the court in *Jackson* v. *Ransom* (*supra*) examined the original deed containing the figures which were the subject of dispute in that case, we find that the disputed figure here seems to be precisely similar, except in size, to the last figure of those intended to express the amount of the note in the margin, and to signify that the note was for $200, without the addition of any cents, which figure was undoubtedly intended for a cipher. We also observe that the figure in dispute is not precisely like the figure 1 in the date of the note. While, therefore, though we can see that the figure in dispute so much resembles that which the defendant's counsel claims it to be, that, if no question were made about it, it would generally be so read, yet from the examination of the whole paper, as photographically copied, and assuming it to be a question in reference to which we may go behind the decision of the referee, we are unable to say that there is no doubt about, or that, on the face of it, it must be read as either party claims it should be.

The judgment must be affirmed.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, November 13, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]