| 52 | 65 |
| 55 | 20 |
| 55 | 418 |

## WATKINS v. GREER.

1. CONTRACTS: *Construction: Parol evidence to explain writing.*

Where the provisions of a written contract are apparently conflicting, parol evidence is admissible to show the subject matter of the agreement, the circumstances surrounding the parties at the time it was made, and their subsequent conduct under it, as a means of correctly interpreting the language employed. In such case it is also admissible to prove changes or modifications in the phraseology of the contract made at the time it was being reduced to writing, to better express the intention of the parties. But attorneys who prepared the instrument cannot be permitted to give in evidence their construction of its language.

2. SAME: *Same.*

The defendant having purchased the plaintiffs' lands at a judicial sale, entered into a written contract with them by which he agreed to sell the lands and after paying out of the proceeds certain debts due to himself and others, to pay over any balance remaining to one of the plaintiffs. After stipulations to the effect that the plaintiffs should actively aid the defendant in effecting a sale and that he should not sell for less than a sum named without their consent, the contract contained the following clause which was inserted by the defendant for the avowed purpose of limiting the trust to one year: "And it is further agreed and understood * * * that the sale of said lands by the said Greer shall not be impeded by the said Watkins and wife, or either of them, but that the sale of said land shall be had within a reasonable time, not exceeding one year from the date hereof, except by mutual agreement of the parties." The parties failed to make a sale and at the end of twelve months the defendant procured a deed from the commissioner who sold the lands, and proceeded to treat them as his own, making thereon lasting and valuable improvements. The plaintiffs, with notice of his outlays, made no claim to the land, or effort to redeem it for nearly seven years. HELD: That although the agreement was not a gratuity on the part of the defendant, it created a trust limited to one year, and became inoperative at the expiration of that time.

APPEAL from *Jefferson* Circuit Court in Chancery.

JOHN A. WILLIAMS, Judge.

Watkins and wife filed their complaint against Greer, alleging that the instrument copied in the opinion created a mortgage, and praying for an account of rents and for redemption, The court below dismissed the complaint for want of equity, and the plaintiff appealed.

LII.—5.

*J. W. House*, for appellant.

The instrument was a mortgage. The law regards the substance of things and not their forms or shadows. *104 Pa. St., 136; 94 Ind., 76; 15 Wisc., 666; 22 id., 465; 58 id., 434; 1 Murphy (N. C.), 116; 70 Ill., 416; 55 Pa. St., 311; 3 W. & S., 384; 41 Ill., 522; 1 Paige (N.Y.), Ch. 56.* It shows upon its face that it is a mortgage, intended to secure the payment of indebtedness mentioned therein. It has all the ingredients of a mortgage. Greer held the land in trust as a security for the payment of the debts mentioned. *24 Hun., 451; 60 Pa. St., 187; Walk. Chy., 110; 5 John. Chy. (Mich.), 435; 17 Beav., 1; 42 Pa. St., 518.* Once a mortgage, always a mortgage. *2 Root (N. C.), 279; 1 Jones on Mortg., sec. 242; 2 Cow. (N. Y.), 324; 2 Col., 89; 18 Peck., 540; 23 Ill., 648; 32 id., 475; 62 Mo., 202; 1 Wend, 433; 3 id., 208 ; 46 Pa. St., 331; 55 id., 311; 12 Wis., 499; 9 Wheat, 489 ; 68 N. Y., 499 ; 82 N. Y., 385 ; 32 Me., 141 ; 3 Jones Eq. (N. C.), 427; 27 Vt., 589 ; 41 Ill., 522; 23 Ark., 479.*

The first clause provides that Greer may sell the lands, and after paying the debts, the surplus is to be paid to Mrs. Watkins. This is a mortgage. *19 Vt., 9; 3 Barb. (N. Y.), 152; 1 Jones on Mortg., sec. 271 and note 5, and 248; 2 Washburn, 55, 56; 5 McLean, C. C., 281; 6 Dana (Ky.), 473; 30 Ind., 495; 3 Watts (Pa.), 188; 6 Pa. St., 390; 31 id., 295; ib., 138; 5 Mass., 109; 70 Ill., 416.*

On payment of the debts the land would have reverted to Mrs. Watkins without a conveyance. *2 Dev. Eq. (N. C.), 470; 18 Pick., 299; 4 Allen (Mass.), 417; 2 J. J. Marsh. (Ky.), 113; 4 Cal., 97; 18 Ill., 578; 3 Watts (Pa.), 118; 11 Mich., 538; 21 Minn., 520; 22 Mo., 79; 38 Mo., 349; 47 Mo., 543; 17 Sarg. & R. (Pa.), 70; 24 Tex., 17; 8 Gray (Mass.), 505; 5 Mass., 109; 22 Ind., 427; 34 Vt., 166; 18 Iowa, 576; 49 Iowa, 487; 49 Wisc., 697; 90 Ill., 245.*

Being a mortgage, an attempt to limit the period of redemption to one year was void. The equity of redemption cannot be thus limited. This clause meant simply that if a sale was

Watkins v. Greer.

not had, or the debts paid within a year, Greer had the right to foreclose his lien in the courts, as under any other mortgage. *7 Johns. Ch., 39; 1 Saxton Ch. (N. J.), 534; 11 Minn., 22; 13 Wisc., 264; 6 Watts. (Pa.), 405; 2 Dev. Eq. (N. C.) 470; 3 Watts. (Pa.), 118; 1 Randolph (Va.), 258; 6 Tex., 294; 3 Sand. Ch., 492; 47 Am. Rep., 551; 7 Vesey, 273; 23 Ill., 648; Busb. Eq. (N. C.), 88; 37 Ill., 216; 6 Pa. St., 390; 7 Watts. (Pa.), 261; 21 Mo., 325; 65 N. C., 520; 16 Sarg. & R. (Pa.), 361; 4 W. Va., 4; 14 Wisc., 453; 44 Wisc., 408; 109 Mass., 130; 64 Pa. St., 319; 3 Watts & S. (Pa.), 384; 9 S. & R. (Pa.), 434; 5 Mich., 231; 18 Pick., 299; 4 Allen (Mass.), 417; 2 J. J. Marsh. (Ky.), 113; 4 Col., 97; 18 Ill., 578; 5 Miss., 317; 2 Cow., 324; 16 Ala., 472; 7 Watts (Pa.), 372; 4 Sneed (Tenn.), 415; 18 N. J. Eq., 358; 39 Me., 110; 5 Gray (Mass.), 505; 1 Allen (Mass.), 107; 26 Conn., 213; 42 Ill., 453; 22 Pick., 526; 13 Vt., 341; 22 Kans., 661; 59 Tex., 423; 3 Pick., 484; 55 Cal., 352; 42 Cal., 169; 1 Sand. Chy., 56; 7 Ark., 505; Pom. Eq. Jur., vol. 3, sec. 1195; 1 Jones' Mortg., 265; Tiedeman on Real Estate, secs. 304–5.*

The whole transaction was merged in this agreement, and its sole object was to secure Greer in the payment of the several demands mentioned. *29 Gratt., 35; 24 Cal., 385; 92 Ind., 49; 7 N. J. Eq., 27; 33 id., 143; 24 id., 397.*

If a mortgage or redeemable estate, parol testimony is inadmissible to contradict it. But if it is not a mortgage on its face, then parol testimony may be introduced to show the real intention of the parties. *37 Ill., 216; 6 Pa. St., 390; 6 Watts, 130; 31 Pa. St., 131; 22 Pa. St., 171; 5 Binney (Pa.), 499; 3 Pom. Eq. Jur., sec. 1195.*

The testimony clearly shows the instrument a security for a debt, and Watkins had a right to redeem until barred by the statute of limitation. *67 Penn. St., 96 ; 3 Watts & S. (Pa.), 384 ; 77 Am. Dec., 658 ; 64 Penn. St., 315.*

*U. M. & G. B. Rose*, for appellee.

1. The testimony of the lawyers to show what the contract meant, there being no charge of any mistake or ambiguity, was clearly inadmissible for any purpose. *1 Pet., 1; 41 Ark., 499; 46 id., 174; 1 Jones Mortg., sec. 96.*

2. When there is reasonable doubt on the face of a writing, whether it be a mortgage or not, it is held a mortgage (*38 Ark., 213; 13 id., 115*), but one cannot take a plain instrument, throw doubt on it by parol evidence, and then say it must be held a mortgage. *1 Jones on Mortg., sec. 335; 40 Ark., 149; 19 Ark., 278; 31 id., 163; 23 id., 212.*

3. The following cases in our own Reports are decisive of this case: *3 Ark., 366; 5 id., 340; 38 id., 264; 34 id., 666.* See, also, *1 Russ. & M., 506; 2 Edw. Chy., 139; 8 Paige, 243.*

*M. L. Bell* and *Hemingway & Austin*, for appellee.

The whole matter was a mere gratuity on Greer's part, and simply meant as it reads, that if the place could be sold *in a year* for more than the amount of Watkins' indebtedness, the surplus should be paid to Watkins. It was not a mortgage and was not so intended by either party; nor did it create a trust. *34 Ark., 665*, and authorities cited by co-counsel, W. R. Coody.

*W. R. Coody*, also for appellee.

1. What this instrument is must be gathered from its language and stipulations as a whole, according to the intent of the parties as gathered from the entire instrument. *3 Ark., 225; 13 id., 125.* Parol evidence not admissible to alter, vary, change or explain a written instrument. *4 Ark., 179; Baker v. Turner, 30 Ark.; 13 id., 592; 16 id., 519; 20 id., 293; 21 id., 69; 15 id., 543.*

2. It cannot be contradicted by a pretended reformation. Courts only reform contracts when there is mutual mistake. They do not make new contracts. *26 Ark., 28; 1 Story Eq., secs. 155, 156; 2 Lead. Cas. Eq., part 1, pp. 981, 982, 983; 8 Rep,. 175, 176, 177; Rector v. Collins, 45 Ark., 5; 1 Story Eq., 164, 165, 166.*

3. Parol evidence not admissible to establish a trust. *Mansf. Dig., sec. 3382 ; Perry on Trusts, sec. 75.*

4. It is not a mortgage, because it contains none of the elements of a mortgage—no mortgagor or mortgagee. *1 Jones Mortg., secs. 11 to 16; 18 Ark., 85, 170*—something conveyed, *37 Ark., 312; 1 Jones Mortg, sec. 136;* no debt to be secured. *Jones on Mortg, secs. 69, 70, 343 to 346.*

It is not a trust. *Perry, secs. 1, 2, 9, 799, 828, etc. ; 41 Ark., 400 ; 15 id., 312; 19 id., 51; 21 id., 539.*

6. Mrs. Watkins was only entitled to the surplus in case of a sale within the year. This created no lien. *37 Ark., 516 ; 39 id., 385.* See, also, *113 U. S., 676; 34 Ark., 365.*

7. While in many of its provisions it resembles a conditional sale, with power to repurchase within a year, it is wanting in several of the necessary elements of such a sale; because, (first) Watkins had no interest in the land to convey ; (second) there was no agreement to reconvey, nor could it revert to them under any circumstances. *Jones Mortg., secs. 267 to 276 and 331 ; Rose Dig., p. 540; 8 Paige, 243.*

8. The contract speaks for itself, that, if a sale could be made *within a year*, all over $18,000 was to be paid to Mrs. Watkins.

9. There was no consideration for the agreement—it was a mere gratuity. *1 Pars. Cont., pp. 429, 436, 450; 34 Ark., 303.* No mutuality. *4 Ark., 252 ; 24 id., 52; 42 id., 243 ; 38 id., 58 to 71.*

WILLIAMS, Sp. J. The decision of this case involves the correct construction of the following agreement, executed February 27, 1878 : " Whereas, at a commissioner's sale had and held at the City of Little Rock, by L. E. Barber, Commissioner, on the 27th day of February, A. D. 1878, under and by virtue of a decree of the Supreme Court of the State of Arkansas, in the case of *James K. Brodie et al. v. Thomas Watkins and wife,* Green B. Greer, of the Town of Searcy, in the County of White and said State of Arkansas, became the purchaser of

the real estate herein after described for the sum of $10,000, $500 of which sum was paid by him in cash, and the balance in a promissory note for nine thousand and five hundred dollars ($9500), payable one half thereof in nine months and the other half thereof in twelve months from the date thereof, to-wit, the 27th day of February, A. D. 1878, and which said promissory note was given by the said Greer with surety, approved by the said Commissioner. And whereas, Thomas Watkins and Margaret Watkins, his wife, of the said Town of Searcy, are indebted to George F. Baucum, of the City of Little Rock, in the sum of eight thousand six hundred and seventy-seven dollas and seventy-five cents ($8,677.75), with interest thereon at the rate of 10 per cent. per annum from the date thereof, and to the said Green B. Greer in the sum of six thousand five hundred dollars ($6500), with interest at the rate of 10 per cent. per annum from the date hereof, and also the sum of $1815, with 10 per cent. interest per annum thereon from the date hereof, being the amount of two notes and interest given by W. R. Coody to Greer & Baucum, and assigned by said Green B. Greer to the said George F. Baucum, but said sum is to be subject to the deduction of whatever sum may be found due and owing to the said Coody, as attorney in the suit of *James K. Brodie et al. v. Thomas Watkins and wife.*

"And, whereas, it is intended by the said Green B. Greer to sell the said real estate for the best advantage for the said Thomas Watkins and Margaret Watkins, his wife.

"Now, therefore, this agreement, made and entered into this 27th day of February, A. D., 1878, by and between the said Green B. Greer, party of the first part, and the said Thomas Watkins and Margaret E. Watkins, his wife, party of the second part, witnesseth, that for and in consideration of the sum of one dollar, to him in hand paid, and other good and valuable considerations to the said Green B. Greer, moving from the said Watkins and wife, the said Green B. Greer hereby agrees to and with the said Watkins and wife that he will not sell the

said real estate which is bounded and described as follows, situate, lying and being in the county of Jefferson, and State of Arkansas, and known as the Stone or Watkins plantation, to wit: Part, about twenty-eight acres of the southeast quarter of the northwest quarter of section twenty-two; part, about fifty-six acres of the south half of the northeast quarter of section twenty-two, and the southeast quarter of section twenty-two; part, about twenty-eight acres, of the southwest quarter of the northwest quarter of section twenty-three; the west half of the southwest quarter of section twenty-four; all of sections twenty-five and twenty-six; the north half of the northwest quarter of section twenty-seven; the east half of the northeast quarter, the southeast quarter, and the southeast quarter of the southwest quarter of section thirty-four; and all of section thirty-five; and the south half of section twenty three; all lying and being in township three south, range ten west, and containing in all three thousand acres of land, for less than the sum of eighteen thousand dollars, without the consent of the said Watkins and wife; and that, after paying out of the purchase money thereof, the said indebtedness to the said Baucum and the said Greer, and the said Coody, and any and all taxes now due, payable and unpaid thereon, or that may hereafter become due and payable thereon, and chargeable against said land, while he, the said Greer, shall own the same, and after the payment of any and all attorneys' fees that are properly chargeable against the said land in the said case of *James K. Brodie et al. v. Thomas Watkins* and wife, as a lien thereon, or upon any part thereof, and when the amount of such fees or any part thereof is disputed by the said Watkins and wife, that he, the said Greer, will only pay such a part thereof as shall be held by the judgment of the Supreme Court of the said State to be so chargeable upon the said land, in case the said Watkins and wife, or either of them, shall resort to the said court for a final determination of the amount of such fees that shall be chargeable against the said land; that then the balance of the pur-

chase money of the said land shall be paid by the said Greer, or his executors, administrators, or assigns, to the said Margaret E. Watkins, her executors, administrators or assigns, for her and their sole and separate use, free from control, debts or liabilities of her said husband, Thomas Watkins.

"And the said Green B. Greer hereby further agrees to and with the said Thomas Watkins and wife, that upon the payment of the said sum of money so due as aforesaid to the said Baucum, and the said Greer, and the said Coody, and all necessary expenses in renting or selling the said land, or that may otherwise become due and payable as hereinbefore set forth and *paid by the said Greer*, he will deliver to the said Watkins and wife, their executors, administrators or assigns, any and all of the evidence of such indebtedness that he may have or hold upon such payment. And the said Green B. Greer hereby further agrees to and with the said Thomas Watkins and wife that pending the sale of the said real estate for the payment of any and all of the indebtedness hereinbefore mentioned, the rents shall be payable to the said Greer, and not personally to either the said Thomas Watkins or the said Margaret E. Watkins, his wife; and the said Thomas Watkins and Margaret E., his wife, hereby agree to and with the said Greer that they will actively aid the said Greer in the sale of said land, and make every exertion to bring for it the best possible price. And it is further agreed and understood by and between the parties hereto, that the sale of the said lands by the said Greer shall not be impeded by the said Thomas Watkins and wife, or either of them, but that the sale of said land shall be had within a reasonable time, not exceeding one year from the date thereof, except by mutual agreement of the parties hereto. And it is further agreed by and between the parties hereto, that the decree in the Supreme Court of the said State, in the said case of *James K. Brodie et al. v. Thomas Watkins and wife*, shall be satisfied upon the record by the said Watkins and wife to the extent of the amount of the purchase money paid for

the said land as aforesaid by the said Greer, to wit, ten thousand dollars, and as of the 27th day of February, A. D. 1878.''

For Watkins and wife, it is contended that this instrument is a mortgage, and that parol evidence may be admitted to explain and establish its character.

On the other side, the contention is: First—That Greer having executed the agreement after his purchase of the land, it was a mere gratuity, and did not bind him. Second—That on its face the writing is a mere declaration of trust, limited to one year, after which, if no sale was made, Greer was freed from its obligation, by its terms, without the aid of extrinsic proof.

While it is true, as a general rule, that in equity parol testimony is admissible to prove that one holding a title apparently absolute, holds as a mortgagee, or as a trustee, yet when parties undertake to reduce the defeasance, or declaration of trust, to writing, we understand that the rule excluding parol evidence obtains, and in the absence of fraud, mistake, or a latent ambiguity, the writing must speak for itself. But this rule does not exclude parol testimony to show the subject matter of the contract, the circumstances which surrounded the parties at its making, and what changes or modifications of the writing were made, at the time it was being reduced to writing, to better express the intention of the parties. In this case parties have introduced parol testimony of their several attorneys, who assisted in their behalf in making the contract, to show not only these admissible facts, but have undertaken to construe the language of the writing. This cannot be permitted. When we take up the contract, we find this language in the last paragraph: "And it is further agreed, and understood, by and between the parties hereto, that *the sale* of the said land by the said Greer shall not be *impeded* by the said Watkins and wife, or either of them, but that *the sale* of said land shall be had within a reasonable time, not exceeding one year from the date hereof, except by mutual agreement of the

1. CON-
TRACTS:
Construc-
tion: Parol
evidence to
explain wri-
ting.

parties." Now, does this limitation reach back, and qualify the whole instrument, and limit its operation, or does "*the sale*" mean the private sale that Greer was to make under its stipulations? And does the limitation of one year only affect *that sale*, and bind Watkins for one year only not to impede it, and after that the parties are left to their legal rights? But, on the face of the writing, it is apparent that both parties wanted the place sold to pay and re-imburse Greer, provided it sold at not less than $18,000, supposed to be the aggregate amount due Greer. Why should Watkins impede, and why should this clause be inserted at the instance of Greer, merely for the purpose of restraining Watkins from doing that which nowhere in the writing appears to be his interest to do?

SAME: Same.

There is here an ambiguity which might well lead, and in this controversy *has* led, different minds to different conclusions in its construction. When we look at the parol testimony, it is proven by Watkins and his counsel, as well as by Greer and his attorneys, that Greer objected to the instrument, as originally drawn without the limitation, and took it, and submitted it to his attorney, who, after examining it, took it to Watkins and his attorneys, and insisted upon this clause (for the declared and avowed purpose of limiting the trust to one year), and after its execution Greer waited a year before making any substantial improvements. Watkins made one effort to make a sale, and failed; Greer failed to make a sale, and at the end of twelve months procured from the Commissioner of the Supreme Court a deed for the land, which was executed to Mrs. Greer, upon an assignment of the certificate of purchase by Greer. Mrs. Greer afterward reconveyed it to Greer. After getting the deed Greer, who had made some temporary repairs, and rented part of the land in 1878, proceeded to the place as his own, made expensive and lasting improvements, and made outlays on the place as a trustee would not have made, and perhaps would not have been warranted in making, upon the principle that a trustee cannot improve his

*cestui que trust* out of his estate; and for nearly seven years Watkins and his wife stood by, knowing, or having opportunity to know, that Greer was making these outlays; never claiming the land, never demanding an account of rents, and credit for the same, nor offering to pay Greer his debts and redeem. " Tell me what you have done under a deed, and I will tell you what that deed means," said Lord Sudgen in *Attorney-General v. Drummond*, cited by Chief Justice COCKRILL, with approval, in delivering the opinion of this court in *Gauss & Son v. Orr and Lindsay, 46 Ark., 130.*

Turning on the light of the parol testimony establishing the surrounding circumstances, and motives and actions of parties, it is manifest that Greer had this limiting clause inserted with a view to prevent a perpetual trust hanging over him, so that after the lapse of twelve months he could put lasting and valuable improvements upon the property, enhance its value for his own benefit, without being held liable to account for rents from year to year, and receive dribbling annual returns for his outlays on the place.

While we hold that the contract is not a gratuity on Greer's part, for, beside the considerations expressed in the writing, Greer was one of the assignees of the decree mentioned in this agreement; and though Baucum was the holder of the note, the assignment of the decree secured, yet Greer being liable on it as indorser to Baucum, placed him in the relation of a quasi creditor holding a pledge of Watkins, and, therefore, this relation and its duties would be sufficient consideration for the contract. Furthermore, Greer admits in his answer, and it is proven, that the agreement sued on herein was made pursuant to a parol promise of Greer, made before the sale, to buy in the land, and make the contract, which of itself was a sufficient moral consideration, yet, in construing the writing, about which minds may honestly differ, we must put ourselves in the place of the parties, and view their motives for, and intention in making it, and their subsequent conduct under it.

In this light it seems reasonably clear that the limitation of the trust covers the whole of the provisions of the contract, and thereby harmonizes apparently conflicting provisions, accounts for omissions in its stipulations which would otherwise be obscure, if not unreasonable.

Finding no error, the decree is affirmed.

HEMINGWAY, J., did not sit in this case.