## CENTRAL COAL & COKE CO., vs GOOD, ET AL.

### Opinion delivered October 5, 1901.

1. *Contracts—Parol Evidence—Privies.*

> Parol testimony will not be admitted to vary the terms of a written contract in a suit between parties to the contract or their privies, but the rule does not apply to third parties.

2. *Evidence—Contradictory of Contract—Harmless Error.*

> In an action upon one contract, certain evidence was sought to be adduced contradicting the terms of another written contract between one of the parties and third persons, where it was sought to make necessary an interpretation of plaintiff's own contract, different from its written terms. *Held,* that although the testimony excluded should have been admitted, no reversible error was committed for plaintiff was conclusively bound by its own contract and the terms of the other were so clear and unambiguous that the attempted contradiction could have had no weight with the jury.

3. *Instructions—Modification Of.*

> In an action upon a contract for furnishing piling, wherein recovery was sought on account of piling furnished by a third party, an instruction that if the jury believed the defendant had a contract with this third party for the furnishing of such piling, yet if the evidence showed that such piling was plaintiff's and had been gotten out by this third party for plaintiff, then defendant is bound to pay plaintiff for same, was modified by adding "and this was known by defendant and acquiesced in by him." *Held,* that error would have been committed had this modification not been added.

4. *Agency—Instructions—Based upon Evidence.*

> In an action by plaintiff to recover for piling furnished, claiming under a contract therefor, and also claiming under a contract between defendant a third party, an instruction was given that if the jury believed that such third party notified defendant that he was delivering the

piling for plaintiff, but the defendant refused to accept the piling as plaintiff's but accepted it as the third party's and so notified the third party, and if they believed that after this such third party acted as the agent of plaintiff and continued to furnish the piling for plaintiff, the plaintiff could not recover. Introduced in evidence in the case were letters written by plaintiff to defendant claiming to have furnished piling through this third party, and a desire to know if amounts were correct in order to settle with this third party. *Held*, that there was sufficient evidence on the question of agency to warrant t heinstruction.

5. *Verdict—Amount—Admissions.*

Defendant, in his answer, admitted a certain amount to be due plaintiff. The jury was properly instructed that if they found the issues for the defendant they should return a verdict for the plaintiff for the amount named in defendant's answer.

Appeal from the United States Court for the Central District.

Wm. H. H. Clayton, Judge.

Action by the Central Coal & Coke Company against George S. Good & Co. Judgment for defendant. Plaintiff appeals. Affirmed.

On October 13, 1895, the plaintiff below (appellant here) filed its original complaint against the defendant below (appellee here). On April 4, 1896, plaintiff filed amended complaint, and alleged that plaintiff and defendant, on the 15th day of December, 1894, entered into a written contract, by the terms of which plaintiff was to furnish to defendant lumber and piling to be used in the construction of the Choctaw, Oklahoma & Gulf Railroad, and defendant was to pay for the same as follows: "For all lumber delivered f. o. b. South McAlester, Ind, Ter., thirteen and 50-100

dollars ($13.50) per one thousand feet, board measure; for all lumber delivered f. o. b. Oklahoma City, Ok. Ter., fifteen and 50-100 dollars ($15.50) per one thousand feet, board measure; for all piles delivered f. o. b. South McAlester, Ind. Ter., twelve and one-half cents per lineal foot; for all piles delivered f. o. b. Oklahoma City, Ok. Ter., sixteen cents (16 cents) per lineal foot." Plaintiff says that it furnished a large amount of lumber and piling according to contract, and defendant accepted and used the same, but has failed and refused to pay for the same, and that there is due plaintiff $9,024.42, with interest, and asks judgment for same. For a second cause of action, plaintiff alleges that at the instance and request of defendant, it furnished and delivered to defendant, piling as follows: "On May 20, 1895, twelve thousand nine hundred and fifty-seven feet; on July 30, 1895, two thousand and forty-four feet; on September 30, 1895, twenty-four thousand one hundred and seventy-seven feet," —and that the same was of the reasonable value of $6,268.48, and asks judgment for same, with interest. Defendant filed answer, and denies every allegation in amended complaint, but admits it owes plaintiff $1,201.04, which it has been ready to pay at all times, and now tenders to plaintiff in court. Defendant says it ought not to be held to pay plaintiff any further sum, because it has paid M. W. Osborn the very sum of money which the plaintiff sues for in this case, and the same was paid to Osborn under contract between defendant and Osborn entered into on December 7, 1894. Defendant, for a second paragraph, and further answer, says plaintiff was to furnish certain timbers to defendant, to be used by it in the completion of certain work; that said timbers, by the contract, were to be furnished within a certain time, and they were not furnished within the time provided, and in consequence defendant was delayed six weeks in completion of said work, by reason of which defendant was damaged in the sum of $10,000; "and that plaintiff herein knew the purpose for which the timber contracted to be delivered by it

was furnished, and that such purpose was to enable defendant to perform its contract in completing said railroad; and that plaintiff also knew the terms of said contract, and the mode provided therein for the assessment of damage for delay in performing." On June 30, 1898, plaintiff filed demurrer to second paragraph of amended answer, as follows: "(1) That said paragraph does not state facts sufficient to constitute a cause of action by way of counterclaim against the plaintiff; (2) that the damages alleged and claimed in said paragraph are not shown to be the proximate result of plaintiff's failure to comply with its contract." On same day said demurrer was overruled by the court, and plaintiff filed its reply to said second paragraph, and denies that any timbers to be furnished under its contract with defendant were not furnished in time provided in the contract; denies that defendant was delayed by plaintiff in the completion of its work for six weeks, and denies that defendant was damaged by reason of such delay in the sum of $10,000. "It denies that it knew the terms of the contract between defendant and the Choctaw, Oklahoma & Gulf Railroad Company, and denies that it knew the mode provided therein for the assessment of damages for such delay in furnishing the same. It denies that defendants were thus damaged in any sum whatever for and on account of any delay of plaintiffs in not furnishing timber in pursuance thereof." On same day the cause was submitted to a jury, and on July 2, 1898, the jury returned the following verdict: "We, the jury, find for the plaintiff in the sum of $1,201.04.     R. Coffield, Foreman." On same day plaintiff filed motion for new trial, which was, on August 30, 1898, overruled by the court, to which ruling plaintiff excepted, and appealed to this court.

*J. H. Gordon, Ira D. Oglesby,* and *Sam H. West,* for appellant.

*Stuart & Lewis,* for appellee.

TOWNSEND, C. J.   The appellant has filed 13 assignments of error, but in his argument discusses only four propositions. The first error discussed was the action of the court in striking out of the deposition of M. W. Osborn, on motion of appellee, certain testimony tending to explain the contract between himself and appellee, and excluding same from jury.   The testimony thus stricken out and the action of the court is as follows:   "The deposition of M. W. Osborn was thereupon offered by the plaintiff and thereupon the defendant objects to that part of said deposition which is as follows: 'Q.  I notice, Mr. Osborn, that in the contract attached hereto, and which you say is a copy of your contract, except as to certain words written on the margin, which you say was not in your original contract, the following words: "For piling furnished, delivered, and driven in bridge, twenty-one cents per lineal foot."   Upon what part or portion of the road to be constructed by George S. Good & Co., the defendant, was this piling to be furnished, delivered, and driven in bridges?   A. Between the South Canadian river and South McAlester,'—for the reason that the same is incompetent, irrelevant, and immaterial, and an attempt to vary the terms of a written contract; which objection was by the court sustained, and said part of said deposition stricken from the jury, to which ruling and action of the court the plaintiff then and there duly excepted.   And the defendant also objects to that part of said deposition which is as follows, for the reason above stated: 'Q.  I notice further in said contract the following words:   "For piling hauled from end of track, and driven in bridges, eighteen cents per lineal foot."   To what part of the road to be constructed by said George S. Good & Co. did this provision apply?   A. From Oklahoma City to the South Canadian river.   Q.  Can you explain why it was that your contract for furnishing piling did not extend over the whole road, and the reasons you had for not making a contract to furnish piling along the whole road?   A. It was understood, when we made the bids for the work, that the piling could not be

had between the South Canadian river and Oklahoma City. It
was also understood that we could find the piling between the
South Canadian river and South McAlester, and that the piling
between the South Canadian river and Oklahoma City would
have to be hauled from the end of the track, and delivered at the
bridge openings,'—which objection was by the court sustained,
and said part of said deposition stricken from the jury, to which
ruling and action of the court the plaintiff then and there duly ex-
cepted." It is insisted by appellee that the action of the court
was correct, because the evidence, if admitted, was an attempt to
explain or vary the terms of a written contract. This might be
true, but, as we understand the rule, parol testimony will not be
admitted to vary the terms of a written contract when the suit is
between the parties to the contract or their privies, but that the
rule does not apply to third persons. "The rule under considera-
tion is applied only (in suits) between the parties to the instru-
ment, as they alone are to blame if the writing contains what was
not intended, or omits that which it should have contained. It
cannot affect third persons, who, if it were otherwise, might be
prejudiced by things recited in the writings, contrary to the
truth, through the ignorance, carelessness, or fraud of the parties;
and who, therefore, ought not to be precluded from proving the
truth, however contradictory to the written statements of others.'
Section 279, 1 Greenl. Ev.; Cunningham vs Milner, 56 Ala. 522;
Talbot vs Wilkins, 31 Ark. 411; Hussman vs Wilke, 50 Cal. 250;
McMaster vs Insurance Co., 55 N. Y. 222, 14 Am. Rep. 239;
Brown vs Thurber, 77 N. Y. 613; Id., 58 How. Prac. 95; Bell vs
Woodman, 60 Me. 463; Tobey vs Leonard, 2 Cliff. 40, Fed. Cas.
No. 14,067; Edgerly vs Emerson, 23 N. H. 555, 55 Am. Dec. 207.
See Langdon vs Langdon, 4 Gray, 186; Arthur vs Roberts, 60
Barb. 580; Robinson vs Moseley, 93 Ala. 70, 9 South. 372; In re
Selser's Estate, 141 Pa. 529, 21 Atl. 777; 2 Pom. Eq. Jur. 324;
Watkins vs Greer, 52 Ark. 65, 11 S. W. 1019. The contract was
admitted, and, in our judgment, the testimony excluded should

have been admitted, and, if this error was material, the case
should be reversed; but an examination of the contract shows its
terms to be so absolutely clear and unambiguous that the at-
tempted contradiction of its terms by one of the parties to it
could not possibly have any weight with an intelligent jury.   Ap-
pellant, in support of its argument under this assignment of
error, insists that the contract between it and appellee and be-
tween Osborn and appellee are almost identical, and "that some
explanation must be allowed where both contracts cover the same
subject-matter, and provide for furnishing the piling, and all of
it, by both parties."   The terms of the two contracts which are
claimed to be so identical as to need explanation relate to the fur-
nishing of piling, and the following are the provisions in each:
Between appellant and appellee, viz.:   "For all piles delivered
f. o. b. South McAlester, Ind. Ter., twelve and one-half cents
(12½c) per lineal foot; for all piles delivered f. o. b. Oklahoma City,
Ok. Ter., sixteen cents (16c.) per lineal foot."   Between appellee
and Osborn, viz.:   "For piling furnished, delivered, and driven
in bridges, twenty-one cents per lineal foot; for piling hauled from
end of track, and driven in bridges, eighteen cents per lineal foot.
The limit of haul from end of track not to exceed seven miles."
From the above we would ask, where the appellant could claim,
under the terms of the contract with the appellee, the right to
furnish any piling at all except f. o. b. at South McAlester and
Oklahoma City.   This is absolutely conclusive by its express
terms, so far as appellant's rights or obligations are concerned, in
the furnishing of piling; and for appellant to say that its contract
was "for furnishing the piling, and all of it," is an assumption that
is wholly without warrant, and is simply an effort to assert a
claim that is without merit, at least in so far as appellee can be
bound by the terms of this contract.   The second paragraph of
the contract between Osborn and appellee provides that, in con-
sideration of the prices hereinafter agreed to be paid to him
(Osborn) he hereby undertakes and agrees to do and perform to

the satisfaction of the chief engineer of the company "all trestling, piling, and timber work on said railroad line between South Mc-Alester and Oklahoma City." How, in the face of this contract, could Osborn testify that "for the piling furnished, delivered, and driven in bridges, 21 cents per lineal foot," applied to the portion of the railroad "between the South Canadian river and South Mc-Alester," and have any person believe he was telling the truth? The same observation can be made to the second question and answer excluded by the court, and his testimony as to what was understood when the contracts were made between himself and appellee has no support in any clause of either contract, and is purely fictitious; all of which was designed to compel appellee to pay plaintiff the amount contracted for delivering piling f. o. b. and also to pay Osborn his contract price.

The second assignment of error discussed by appellant was the refusal of the court to give an instruction asked by appellant and giving the same in a modified form. They are as follows: "(5) The court erred in refusing to give to the jury the instruction asked for by plaintiff which is as follows: 'If the jury believe from the evidence that defendant had a contract with Osborn to furnish and deliver all the piling between South McAlester and Oklahoma City, yet if the evidence shows that the piling in controversy, though delivered by Osborn, was plaintiff's, and had been gotten out by Osborn for the plaintiff, then they are bound to pay plaintiff the fair market price for same, if it was thus received from Osborn, and used by them in the construction of the railroad; and no payment to Osborn would affect plaintiff's right to recover;' and in giving to the jury said instruction in a modified form, as follows: 'If the jury believe from the evidence that defendant had a contract with Osborne to furnish and deliver all the piling between South McAlester and Oklahoma City, yet if the evidence shows that the piling in controversy, though delivered by Osborn, was plaintiff's and had been gotten out by Osborne for the plaintiff, and this was known by defendant, and acquiesc-

(7)

ed in by him, then they are bound to pay plaintiff the fair market value for same, if it was thus received from Osborn and used by them in the construction of the railroad, and no payment to Osborn would affect plaintiff's right to recover." ' It will be observed that the only difference between the instruction asked and the one given are the following words: "And this was known by defendant, and acquiesced in by him." By this instruction, as asked, the jury were told that, if they believed the defendant had a contract with Osborn to furnish and deliver all piling between South McAlester and Oklahoma City, and yet if the evidence shows that the piling was plaintiff's, and had been gotten out by Osborn for the plaintiff, then the defendant is bound to pay plaintiff for the same. The court simply said, in addition, defendant is bound to pay plaintiff if the defendant knew "this piling was plaintiff's, and had been gotten out by Osborn for plaintiff," and acquiesced in the same. Would there be any justice or equity in the proposition that, if the jury believed that defendant and Osborn had a contract, and Osborn delivered this piling, defendant should pay plaintiff for the same and Osborn also, unless it knew that it was plaintiff's and had been gotten out by Osborn for plaintiff, and used the same while it had such knowledge? The court, in our judgment, would have committed a very grave error had it not modified the instruction as requested.

The third assignment of error discussed by appellant was the giving to the jury by the court of the following instruction: "If you believe from the evidence that, notwithstanding Osborn may have, for plaintiff, notified defendant, or his agents, that he was delivering the piling in controversy for plaintiff, still, if defendant refused to accept said piling as plaintiff's, but accepted same as Osborn's, and so notified Osborn, and you believe from the evidence that Osborn was acting as the agent of plaintiff, and if, after said notice, Osborn, for plaintiff, continued to furnish said piling for plaintiff, the plaintiff cannot recover." The appellant insists that there is nothing in the pleadings or evidence

that justifies this instruction, and cites authorities to establish the propositions that "allegations without evidence are without value, and equally so is evidence without allegations." We believe these propositions are perfectly sound, and sustained by the authorities. Appellant insists, after citing the second paragraph of defendant's answer, as follows: "Defendant further says that it ought not to be held to pay plaintiff any further sum of money herein, because it has paid M. W. Osborn the very sum of money which the plaintiff sues for in this case, and the same was paid to the said Osborn under and by virtue of a certain contract entered into between defendant and Osborn on the 7th day of December, 1894;" that "the clear-cut issue thus formed was, 'Did the defendant purchase of and pay Osborn for the material under and by virtue of a certain contract entered into between defendant and said Osborn on the 7th day of December, 1894,' or was it furnished by plaintiff?" and says that here there is neither allegation nor evidence. But how does appellant claim it furnished this piling to defendant? The appellant, through its manager, on May 20, 1895, addressed the following letter to the appellee: "St. Louis, Mo., May 20th, 1895. Messrs. Geo. S. Good & Co., South Mc-Alester, I. T.—Dear Sirs: Referring to the piling which we contracted to deliver for the construction west of the Canadian river, I have a statement from the chief engineer that we have furnished through M. W. Osborn, 12,957 feet. We have today made bill against your company for this amount at 16 cents per lineal foot, according to contract. We wish to settle this matter up with Mr. Osborn as soon as possible. Please advise if this is correct. Very truly yours, W. L. Whittaker, Manager." The letter says, "We have furnished through M. W. Osborn," and "We wish to settle this matter up with Mr. Osborn as soon as possible." It would appear from this letter that Osborn was representing the plaintiff; therefore there is some evidence explaining plaintiff's allegation of furnishing piling to which this instruction could apply. But, to show that defendant did not acquiesce in this

claim of plaintiff, it is only necessary to copy the following letter from defendant to plaintiff: "South McAlester, I. T., June 10, 1895. Central Coal & Coke Co., St. Louis, Mo.—Gentlemen: Your favor of 20th inst., together with bill for piling for 12,157 feet, received. The only bill we ever ordered from your firm was 50 28-ft. piles, for which we have paid you. Please explain a little more fully your position in this matter, and why you return us this bill. Yours truly, Geo. S. Good & Co. Dict. by T. C. H." It appears that plaintiff forwarded another bill, and defendant replied to it as follows: "South McAlester, I. T., Aug. 14, 1895. Central Coal & Coke Co., Houser Building, St. Louis, Mo.—Dear Sirs: We have your bill for piling delivered, and we do not understand them. You have only delivered us 50 28-ft . piles, and we owe you for no others, and do not understand why you send us bills for same. Please explain. Yours truly, Geo. S. Good & Co." This was at a date when the railroad was about completed, and plaintiff's reply to this was as follows: "St. Louis, Aug. 20th 1895. Messrs. Geo. S. Good & Co., South McAlester, I. T.— Dear Sirs: Replying to your favor of August 14th, we contracted with you to furnish all the piling needed for construction west of the Canadian river, and according to this contract we arranged with Mr. M. W. Osborn to deliver this piling, and as fast as it has been delivered and accepted by the chief engineer of the Choctaw, Oklahoma and Gulf R. R. we have paid Mr. Osborn for it. It certainly is our piling after we have paid for it and it has been accepted by the R. R. Co. I hope this explanation of the matter will be satisfactory. Yours very truly, W. L. Whittaker, Manager." This latter letter states, "We arranged with Mr. M. W. Osborn to deliver this piling." What piling? "We contracted with you to furnish all the piling needed for construction west of the Canadian river." It has heretofore been shown that this is not true. Plaintiff does not here contend that it is seeking pay for piling delivered outside of any contract, and that it is entitled to pay for piling delivered through Osborn, and received and used by

defendant, under a quantum meruit. It appears that Osborn was the genius who caused all the troubles out of which this suit arose. He sent to plaintiff the following telegram, and received the following reply: "South McAlester, I. T., 1-19, 1895. W. L. Whittaker, care Central Coal & Coke Co., St. Louis, Mo.: Will furnish all piling Oklahoma City to South Canadian river for thirteen and one-half cents lineal foot. Answer quick. (Signed) M. W. Osborn." "St. Louis, Mo., 1-20, 1895. M. W. Osborn, City: Will accept proposition your message of nineteenth, thirteen and one-half cents, all piling Canadian river to Oklahoma if satisfactory to Good & Co. Letter follows. (Signed) W. F. Whittaker." The plaintiff at that time wanted the defendant to acquiesce, and Osborn testified in his deposition that defendant did acquiesce, though he would not give his deposition when Hitchcock, manager of defendant, was present; but Hitchcock denies absolutely any knowledge of this telegram and answer. In fact, this whole claim of plaintiff is based upon piling furnished by Osborn for plaintiff, and is so shown by Whittaker's letters in evidence in this case. It is unnecessary to take Osborn's evidence as the only evidence showing his agency. If Osborn was acting for plaintiff, as Mr. Whittaker says he was, "notice to Osborn that defendant refused to accept said piling as plaintiff's, but accepted same as Osborn's," was notice to plaintiff, and it cannot recover. We think, under the evidence in this case, the instruction was proper, and that the authorities so fully cited by appellant are not applicable to this case.

The fourth and last assignment of error discussed by appellant was the giving to the jury by the court of the following instruction: "If you find in favor of the defendant in this action, your verdict will be for the plaintiff in the sum of $1,201.04." We can see no merit in this assignment of error. Defendant admitted the amount named was due plaintiff, but did not admit that any further or greater sum was due to plaintiff, and the jury failed to find any other sum was due. The instructions of the

court were, in our opinion, impartial, and fair to both plaintiff and defendant, and stated the law applicable to the facts.    We have read the testimony with much care, and to our minds the testimony of Mr. Hitchcock was a frank, straightforward, and businesslike statement of the dealings between these parties, and we have no doubt had great weight with the jury in their consideration of the case.    We have no reasonable doubt that the witness Osborn failed to tell the truth, and Whittaker either did not know what the contract of the plaintiff with the defendant was, or found it necessary to insist upon something untenable in the hope of making a case. Upon the whole, we think the justice of the case was reached by the verdict, and the judgment of the court is therefore affirmed.

GILL and RAYMOND, JJ., concur.